UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ROGER PUDLIN,

        Plaintiff,

   -v-                            No.  14CV8681-LTS-HBP

AXA EQUITABLE LIFE INSURANCE
COMPANY,

        Defendant.
--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        <u>Pro se</u> Plaintiff Roger Pudlin ("Pudlin" or "Plaintiff"), an individual holding a health insurance policy with AXA Equitable Insurance Company ("AXA" or "Defendant"), brings this action against AXA alleging discrimination based on a mental health disability in violation of Title III of the Americans With Disabilities Act ("ADA") resulting from a change in AXA's reimbursement policy with respect to mental health benefits.[1]  Defendant moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's Second Amended Complaint ("SAC," Docket Entry No. 48), arguing principally that the SAC fails to state a claim upon which relief can be granted because the ADA addresses only access to insurance company premises and products, not features or content of insurance policies.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

---

[1]      The Second Amended Complaint also suggests that Plaintiff contends that AXA's change in reimbursement standards was inconsistent with its obligations under the insurance policy.  The Court declines to exercise jurisdiction of any state law claims in this regard because the Second Amended Complaint indicates no basis for such jurisdiction independent of Plaintiff's federal claim under the ADA and, as explained below, Plaintiff has failed to state a viable claim under the ADA.

The Court has reviewed the parties' submissions carefully and, for the reasons set forth below, grants Defendant AXA's motion.

BACKGROUND[2]

Pudlin has maintained an AXA lifetime guaranteed renewable Major Medical Health Insurance Policy in good standing since May 22, 1979.  (See SAC at ECF p. 5; see also Opposition, Docket Entry No. 67-2 at ECF p. 8.)  Pudlin's policy provides for a $1,000 per-sickness basic deductible that, once satisfied, establishes a three-year benefit period for separate sicknesses, each with a benefit limit of $250,000 over each three-year period.  (See Opposition, Docket Entry No. 67-3 at ECF p. 1; Docket Entry No. 67-4 at ECF p. 1.)  The policy further provides for a 90-day limit within each three-year period, for "diagnosis and treatment of mental or nervous diseases or disorders on an outpatient or ambulatory basis."  (Opposition, Docket Entry No. 67-4 at ECF p. 4.)  Plaintiff receives Social Security Disability Benefits and has been treated over the years for a number of physical and mental health conditions.  (See SAC at ECF

---

[2]    The facts recited herein are drawn from the Second Amended Complaint in this action and are taken as true for the purposes of this motion practice.  (See Weshnak v. Bank of America, N.A., 451 F. App'x 61 (2d Cir. 2012) (at the motion to dismiss stage, the court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor.").  Additional facts are drawn from the documents proffered by Plaintiff as attachments to his Motion in Opposition to Defendant's Motion to Dismiss ("Opposition").  (See Docket Entry No. 67; see also International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) ("when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment") (internal quotation marks and citations omitted).

pp. 7, 11.)  It appears that, prior to 2009, AXA applied the 90-day treatment limitation to provide

benefits for each separately diagnosed mental health condition.  On October 30, 2009, Pudlin

received a letter from AXA informing him that he had exceeded the permissible use limits of the

mental health benefits provided pursuant to his policy.  (See Opposition, Docket Entry No. 67-6

at ECF p. 1.)  Specifically, the letter noted that Pudlin's policy established a "90 visit limitation

with respect to all claims for mental and nervous diseases during each benefit period" and that

Pudlin could not "avoid the 90 visit limitation on mental and nervous disorders by arbitrarily

defining [his] treatment under various diagnostic categories and deeming each category as a

separate condition eligible for benefits."  (Id.)  The letter further informed Plaintiff that AXA

had determined that separate treatment of Plaintiff's mental health diagnoses was not warranted

and that "[a]ll future mental and nervous disorder claims, regardless of how they are

denominated, will be processed in [a single treatment code] until the benefit period ends."  (Id. at

ECF p. 2.)

        Pudlin commenced this action against AXA on October 23, 2014, alleging that

AXA had changed its mental health reimbursement policy in a manner that constituted unlawful

discrimination against him as an individual with a mental health disability because AXA had not

implemented a similar change with respect to its coverage of physical disabilities.  (See

Complaint, Docket Entry No. 1 at ECF p. 3.)  On April 16, 2015, Pudlin filed an Amended

Complaint asserting violations under Title III of the ADA based on AXA's refusal to cover the

cost of custom orthotic shoes and outpatient mental health claims outside of his 90 session limit.

(See Amended Complaint, Docket Entry No. 10 at ECF p. 2.)  On November 20, 2015, Pudlin

filed a Second Amended Complaint, alleging that AXA had always allowed a 90 visit limit for

each separately diagnosed psychiatric disease and had reimbursed him accordingly.  (See SAC at

ECF p. 4.)  By changing its reimbursement policy, Pudlin asserted, AXA had discriminated

against him in violation of Title III of the ADA by vastly reducing his psychiatric benefits and

arbitrarily imposing a criterion for reimbursement of specialized treatment.  (Id. at ECF p. 8.)

On January 20, 2016, AXA filed the instant motion to dismiss.  (See Docket Entry No. 56.)


DISCUSSION

When deciding a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to

dismiss a complaint, the Court "must accept as true all of the factual allegations set out in the

Plaintiff's complaint, draw inferences from those allegations in the light most favorable to the

Plaintiff, and construe the complaint liberally."   Roth v. Jennings, 489 F.3d 499, 510 (2d Cir.

2007).  The Court must give particular solicitude to complaints brought by pro se Plaintiffs,

which are held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v.

Kerner, 404 U.S. 519, 520 (1972).  Courts must "liberally construe pleadings and briefs

submitted by pro se litigants, reading such submissions to raise the strongest arguments they

suggest."  Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks

and citations omitted).  This liberal standard is particularly important when a Plaintiff has

claimed that his civil rights have been violated.  McEachin v. McGuinnis, 357 F.3d 197, 200 (2d

Cir. 2004).  Pro se complaints, however, must still meet the requirement, applicable to all

complaints, that the plaintiff plead "enough facts to state a claim to relief that is plausible on its

face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 546 (2007).

AXA has moved to dismiss Pudlin's Second Amended Complaint for failure to

state a claim under the ADA, arguing that Plaintiff's complaint is, in essence, a complaint about the coverage provided under his policy and that the ADA does not regulate the content or terms of insurance policies.  Plaintiff focuses his claim on the administration of the 90-day provision, arguing that AXA's reimbursement policy violates the ADA because it treats disabled people with multiple mental health conditions less favorably than it does disabled people with only a single mental health condition.

Title III of the ADA prohibits "discrimination against an individual on the basis of disability in the full and equal enjoyment of goods and services . . . of any place of public accommodation by any person who owns, leases or operates a place of public accommodation." Krist v. Kolombos Rest., Inc., 688 F. 3d 89, 94 (2d Cir. 2012) (internal quotation marks and citations omitted).  Plaintiff argues that this provision prohibits benefit differentials among classes of disabled people.  Settled Second Circuit precedent compels rejection of Plaintiff's ADA claim.  While "insurance offices" are specified in Title III as places of public accommodation, see Pallozzi v. Allstate Life Ins. Co., 198 F. 3d 28, 31 (2d Cir. 1999) ("We therefore hold that Title III does regulate the sale of insurance policies in insurance offices"), the ADA's prohibition on discrimination has been held to reach the availability of insurance policies but not the specific provisions of those policies.  Thus, an insurance company cannot deny a generally-available policy to a customer on the basis of the customer's disability, but the statute does not prohibit differentials in the levels of benefits offered under the policies for different conditions.  In E.E.O.C. v. Staten Island Sav. Bank, the Second Circuit considered a claim of discrimination under Title I of the ADA in which an employee challenged his employer-provided disability benefit plan's provision of more generous benefits for physical disabilities

than for mental health-related disabilities.  207 F. 3d 144, 145 (2d Cir. 2000).  Finding the scope

of the statute's prohibition on discrimination in "terms, conditions and privileges of

employment" unclear, the court construed the legislation in light of the "long-term history of

disability plans," and concluded that Title I did not require the provision of equal benefits for

mental and physical disabilities.  Id. at 149.  The court, concurring with other circuits that had

addressed the issue, reasoned that, "'had Congress intended to control which coverages had to be

offered by employers, it would have spoken more plainly because of the well-established

marketing process to the contrary.'"  Id.  (citation omitted).  Legislative history indicating that

equal access to a plan available to all employees, and recognizing that plans may offer

differentials for mental health coverage, was cited as well.  Id. at 150.  The Staten Island Savings

Court concluded that "'[s]o long as every employee is offered the same plan regardless of that

employee's contemporary or future disability status, then no [ADA-covered] discrimination has

occurred even if the plan offers different coverage for various disabilities.'"  Id. (citations

omitted).

    Among the out-of-circuit decisions relied upon by the court in Staten Island

Savings were two cases decided under Title III of the ADA, which held that insurers could

lawfully cap benefits for particular health conditions without violating the statute.  See McNeil

v. Time Ins. Co., 205 F.3d 179 (5th Cir. 2000);  Doe v. Mutual of Omaha Ins. Co., 179 F.3d 557

(7th Cir. 1999).  The courts' reasoning – that Congress would have been much more explicit in

addressing the content or terms of policies had it intended to upset established insurance

practices of differentiating among levels of coverage provided for types of health conditions – is

applicable equally to Title I's employment terms and conditions requirement and to Title III's

requirement that public accommodations, including goods and services, be provided on a nondiscretionary basis.  Soshinsky v. First UNUM Life Ins. Co., 105 F. Supp. 2d 10, 11 (N.D.N.Y. 2000) ("The only practical difference [between Title I and Title III claims involving different benefit levels for mental and physical disabilities] is whether the employer secures the disability benefits for the employee from the insurance company, or whether the individual goes out and secures the benefits directly from the insurance company himself.").  Nothing in the ADA requires an insurer to alter its product.  Rather, the statute requires the insurer to make products that it offers available both to disabled and non-disabled customers.  McNeil, 205 F.3d at 187; see also Doe, 179 F.3d at 559 ("The common sense of [Title III of ADA] is that the content of goods or services offered by a place of public accommodation is not regulated. A camera store may not refuse to sell cameras to a disabled person, but it is not required to stock cameras specially designed for such persons.").

Here, Plaintiff contends that AXA's 90-day treatment limit is applied to both of the "classes" of mental health policyholders that he identifies – those who suffer from only one condition and those whose illnesses involve multiple conditions.  He does not allege that he has been denied access to any mental health coverage that is offered to non-disabled persons.  His complaint goes, rather, to AXA's administration of the policy terms.  Such administration, like the terms themselves, is outside the scope of the ADA's prohibition of discrimination in the provision of goods, services or accommodations of a covered entity.  Because the ADA does not regulate the terms or administration of the terms of insurance policies, the Court does not address Plaintiff's contentions regarding AXA's alleged noncompliance with the terms of the policies.  Such contentions relate to state law issues that are beyond the scope of the ADA.

Because Plaintiff has failed to allege facts demonstrating that AXA denied him the opportunity to obtain the benefits offered under the policy on a nondiscriminatory basis, he has not stated a viable cause of action under the ADA and his complaint must be dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's  motion to dismiss Plaintiff's Second Amended Complaint is granted, and Plaintiff's claims under the Americans With Disabilities Act are dismissed with prejudice.  To the extent Plaintiff asserts state law claims, the Court finds no basis for independent jurisdiction and declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction of the claims, which are therefore dismissed without prejudice to litigation in an appropriate forum.[3]  The Clerk of Court is directed to enter judgment in Defendant's favor and close this case.

This Memorandum Opinion and Order resolves Docket Entry No. 56.

SO ORDERED.

Dated: New York, New York
       June 24, 2016

   /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

**Copy Mailed To:**
Mr. Roger Pudlin
320 W 86th Street, Apt. #2B
New York, NY 10024

[3]  Plaintiff's attention is directed to the statute of limitations tolling provision of 28 U.S.C. § 1367(d).